















CGL    11/30/05    14:51

3:05-CV-02186    EVERY NATION CAMPUS V. ACHTENBERG

*1*

*CMP.*

35802

1 | Jeremy D. Tedesco, Ariz. Bar No. 023497*
ALLIANCE DEFENSE FUND
2 | 15333 North Pima Road, Suite 165
3 | Scottsdale, Arizona 85260
(480) 444-0020; (480) 444-0028 (fax)
4 |
| Timothy D. Chandler, CA Bar No. 234325
5 | ALLIANCE DEFENSE FUND
6 | 101 Parkshore Drive, Suite 155
Folsom, California 95630
7 | (916) 932-2850; (916) 932-2851 (fax)

8 | Attorneys for Plaintiffs
*Pro Hac Vice Application Pending
9 |

FILED
NOV 28 2005
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

EVERY NATION CAMPUS MINISTRIES AT SAN DIEGO STATE UNIVERSITY, a student organization at San Diego State University; EVERY NATION CAMPUS MINISTRIES AT LONG BEACH STATE UNIVERSITY, a student organization at California State University, Long Beach; ALPHA DELTA CHI-DELTA CHAPTER, a sorority at San Diego State University; ALPHA GAMMA OMEGA-EPSILON CHAPTER, a fraternity at San Diego State University; HALEY HAWTHORNE, an individual; TREVOR STOKES, an individual; GWENDOLYN DAVIS, an individual; MELISSA TRAVIS, an individual; JACKIE LEWIS, an individual; JAMES ROSENBERG, an individual; DAVID SHOKAIR, an individual,

Plaintiffs,

v.

ROBERTA ACHTENBERG, JEFFREY BLEICH, HERBERT CARTER, CAROL CHANDLER, MOCTESUMA ESPARZA, DEBRA S. FARAR, ROBERT FOSTER, MURRAY L. GALINSON, GEORGE GOWGANI, MELINDA GUZMAN MOORE, WILLIAM HAUCK, RAYMOND

Case No.

'05CV 2186    LAB AJB

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

ORIGINAL

HOLDSWORTH, JR., RICARDO F. ICAZA, COREY JACKSON, BOB LINSCHEID, CRAIG R. SMITH, and KYRIAKOS TSAKOPOULOS, in their official capacities as members of the Board of Trustees of the California State University; ARNOLD SCHWARZENEGGER, Governor of California, CRUZ BUSTAMANTE, Lieutenant Governor of California, FABIAN NUNEZ, Speaker of the California State Assembly, JACK O'CONNELL, California State Superintendent of Public Education, and CHARLES B. REED, California State University Chancellor, in their official capacities as ex-officio members of the Board of Trustees of the California State University; JEFFREY KLAUS, individually and in his official capacity as Director of Student Life and Development at California State University, Long Beach; F. KING ALEXANDER, in his official capacity as President of California State University, Long Beach; DOUGLAS CASE, individually and in his official capacity as Coordinator of Fraternity and Sorority Life at San Diego State University; JOHN or JANE DOE, in his or her official capacity as successor in interest to Dr. Evette Castillo, Assistant Dean of Students at San Diego State University; ROBYN L. RUBENSTEIN, in her official capacity as Coordinator of Student Organizations and Activities at San Diego State University; STEVEN L. WEBER, in his official capacity as President of San Diego State University; THE ACTIVITIES POLICY BOARD OF SAN DIEGO STATE UNIVERSITY; and STEFANY FONTELA, MONIQUE POUGET, STACIE TOYOFUKU-AKI, CAROLYN CHIN, LAUREN CAPOBIANCO, ALEJANDRA FERNANDEZ, JENNIFER WITKOWSKI, BRANDON CLARK, JOHN LY, MICA LARGO, SHANE SCHERER, BEN FISHER, SABRINA BROWN, and CRYSTAL BRANDAN, in their official capacities as members of the Activities Policy Board,

Defendants.

Come now the Plaintiffs, by and through their attorneys, and for their causes of action against Defendants aver the following:

**INTRODUCTION**

1.      This case is a federal civil rights action brought against Defendants by four Christian student groups—Alpha Gamma Omega-Epsilon Chapter ("AGO"), a Christian fraternity at San Diego State University, Alpha Delta Chi-Delta Chapter ("ADX"), a Christian sorority at San Diego State University, and two Every Nation Campus Ministries student groups, one at Long Beach State ("ENCM-LB") and the other at San Diego State University ("ENCM-SDSU")—and their members. Each of these student groups requires that its members and/or officers adhere to and follow a Christian statement of faith and code of conduct. As a condition of receiving official university recognition, Defendants require student groups to abide by their nondiscrimination policies, which compel student organizations to open their membership and leadership positions to all students without regard to, *inter alia*, religion, sexual orientation, and marital status. Student organizations that do not comply with Defendants' nondiscrimination policies are denied official recognition, which denies the group access to the many rights and benefits enjoyed by recognized groups, including access to the primary fora and avenues for communicating their viewpoints on campus. Plaintiffs cannot comply with Defendants' nondiscrimination policies without violating their sincerely held, orthodox Christian beliefs. Consequently, each organization has been denied official recognition at its respective university. The Defendants' nondiscrimination policies on their face and as applied violate the First and Fourteenth Amendments to the United States Constitution.

2.      Plaintiffs seek preliminary and permanent injunctive relief to enjoin Defendants from depriving Plaintiffs of their constitutional rights. Plaintiffs also seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 to determine the constitutionality of the Defendants' non-discrimination policies, on their face and as applied, and reasonable costs of litigation, including attorney's fees and expenses. Finally, Plaintiffs seek nominal damages.

3

**JURISDICTION AND VENUE**

3.     This action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments and 42 U.S.C. § 1983.

4.     This Court has original jurisdiction over the federal claims by operation of 28 U.S.C. §§ 1331 and 1343.

5.     This Court has authority to grant the requested injunctive relief under 28 U.S.C. § 1343; the requested declaratory relief under 28 U.S.C. §§ 2201-02; the requested damages under 28 U.S.C. § 1343; and costs and attorneys fees under 42 U.S.C. § 1988(b).

6.     Venue lies in the Federal District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b).  A substantial part of the actions or omissions giving rise to this case occurred within the District, and at least one Defendant resides in this District.

**IDENTIFICATION OF THE PARTIES**

**Plaintiffs**

7.     Plaintiff ENCM-SDSU is an unincorporated student organization at San Diego State University.  It is a local chapter of the national organization known as Every Nation Campus Ministries, the student arm of Every Nation Ministries, Inc., a nonprofit California corporation with its principle offices in Los Angeles, CA.

8.     Plaintiff ADX is a women's sorority at San Diego State University.  It is a local chapter of the National Fraternity of Alpha Delta Chi.  Local chapters of the national organization, like ADX, operate under their own bylaws and are also bound and governed by the constitution, policies, and statement of faith of the national organization.

9.     Plaintiff AGO is a men's fraternity at San Diego State University.  It is a local chapter of the national organization known as Alpha Gamma Omega Fraternity.  Local chapters of the national organization, like AGO, operate under their own bylaws and are also bound and governed by the constitution, policies, and statement of faith of the national organization.

10.    Plaintiff ENCM-LB is an unincorporated student organization at Long Beach State University.  It is a local chapter of the national organization known as Every Nation Campus Ministries, the student arm of Every Nation Ministries, Inc., a nonprofit California

4

1    corporation with its principle offices in Los Angeles, CA.

2        11.      Plaintiff Haley Hawthorne is, and was at all times relevant to this Complaint, a

3    student at Long Beach State and president of ENCM-LB.

4        12.      Plaintiff Trevor Stokes is, and was at all times relevant to this Complaint, a

5    student at San Diego State and president of ENCM-SDSU.

6        13.      Plaintiff Gwendolyn Davis is, and was at all times relevant to this Complaint, a

7    student at San Diego State and an officer of ENCM-SDSU.

8        14.      Plaintiff Melissa Travis is, and was at all times relevant to this Complaint, a

9    student at San Diego State and president of ADX.

10       15.      Plaintiff Jackie Lewis is, and was at all times relevant to this Complaint, a

11   student at San Diego State and devotional chair of ADX.

12       16.      Plaintiff James Rosenberg is, and was at all times relevant to this Complaint, a

13   student at San Diego State and chaplain of AGO.

14       17.      Plaintiff David Shokair is, and was at all times relevant to this Complaint, a

15   student at San Diego State and Treasurer of AGO.

16   **Defendants**

17       18.      Defendants Roberta Achtenberg, Jeffrey Bleich, Herbert Carter, Carol Chandler,

18   Moctesuma Esparza, Debra S. Farar, Robert Foster, Murray L. Galinson, George Gowgani,

19   Melinda Guzman Moore, William Hauck, Raymond Holdsworth, Jr., Ricardo F. Icaza, Corey

20   Jackson, Bob Linscheid, Craig R. Smith, Kyriakos Tsakopoulos, Arnold Schwarzenegger, Cruz

21   Bustamante, Fabian Nunez, Jack O'Connell, and Charles B. Reed are, and were at all times

22   relevant to this Complaint, members of the Board of Trustees of the California State University.

23   These Defendants' duties include the adoption of rules and regulations that govern the

24   California State University, including Long Beach and San Diego State. They are sued in their

25   official capacities.

26       19.      Defendant Jeffrey Klaus is, and was at all times relevant to this Complaint,

27   Director of Student Life and Development at Long Beach State. Mr. Klaus's duties include the

28   oversight of the recognition process for student organizations and the application of University

1   policies and regulations to those student organizations.  Mr. Klaus is sued in his individual and

2   official capacities.

3          20.     Defendant F. King Alexander is President of Long Beach State University.

4   President King's duties include the oversight of Long Beach State and the execution of policies

5   and regulations that govern the University.  He is sued in his official capacity.

6          21.     Defendant Douglas Case is, and was at all times relevant to this Complaint,

7   Coordinator of Fraternity and Sorority Life at San Diego State.  Mr. Case's duties include the

8   oversight of the recognition process for fraternal student organizations and the application of

9   University policies and regulations to those student organizations.  Mr. Case is sued in his

10  individual and official capacity.

11         22.     Defendant John or Jane Doe is the successor in interest to Dr. Evette Castillo,

12  who was at all times relevant to this Complaint Assistant Dean of Students at San Diego State

13  University and a member of the Activities Policy Board at San Diego State.  The Assistant

14  Dean of Students' duties include the oversight of the recognition process for student

15  organizations and the application of University policies and regulations to those student

16  organizations.  John or Jane Doe is sued in his or her official capacity.

17         23.     Defendant Robyn L. Rubenstein is the Coordinator of Student Organizations and

18  Activities at San Diego State University.  Ms. Rubenstein's duties include the oversight of the

19  recognition process for student organizations and the application of University policies and

20  regulations to those student organizations.  Ms. Rubenstein is sued in her official capacity.

21         24.     Defendant Steven L. Weber is, and was at all times relevant to this Complaint,

22  President of San Diego State University.  President Weber's duties include the oversight of San

23  Diego State and the execution of policies and regulations that govern the University.  He is

24  sued in his official capacity.

25         25.     Defendant Activities Policy Board of San Diego State University ("APB") is a

26  board composed of students and staff and faculty members of San Diego State University.  The

27  APB is responsible for managing on-campus student groups, including registering clubs for on-

28  campus status and applying University policies and regulations to student organizations.

6

26.     Stefany Fontela is, and was at all times relevant to this Complaint, a member and Chair of the APB at San Diego State.  Ms. Fontela's duties include the oversight of the recognition process for student organizations and the application of University policies and regulations to those student organizations. She is sued in her official capacity.

27.     Monique Pouget is, and was at all times relevant to this Complaint, a member of the APB at San Diego State.  Ms. Pouget's duties include the oversight of the recognition process for student organizations and the application of University policies and regulations to those student organizations. She is sued in her official capacity.

28.     Stacie Toyofuku-Aki is, and was at all times relevant to this Complaint, a member of the APB at San Diego State.  Ms. Toyofuku-Aki's duties include the oversight of the recognition process for student organizations and the application of University policies and regulations to those student organizations. She is sued in her official capacity.

29.     Carolyn Chin is, and was at all times relevant to this Complaint, a member of the APB at San Diego State.  Ms. Chin's duties include the oversight of the recognition process for student organizations and the application of University policies and regulations to those student organizations. She is sued in her official capacity.

30.     Lauren Capobianco is, and was at all times relevant to this Complaint, a member of the APB at San Diego State.  Ms. Capobianco's duties include the oversight of the recognition process for student organizations and the application of University policies and regulations to those student organizations. She is sued in her official capacity.

31.     Alejandra Fernandez is, and was at all times relevant to this Complaint, a member of the APB at San Diego State.  Ms. Fernandez's duties include the oversight of the recognition process for student organizations and the application of University policies and regulations to those student organizations. She is sued in her official capacity.

32.     Jennifer Witkowski is, and was at all times relevant to this Complaint, a member of the APB at San Diego State.  Ms. Witkowski's duties include the oversight of the recognition process for student organizations and the application of University policies and regulations to those student organizations. She is sued in her official capacity.

7

33.     Brandon Clark is, and was at all times relevant to this Complaint, a member of the APB at San Diego State. Mr. Clark's duties include the oversight of the recognition process for student organizations and the application of University policies and regulations to those student organizations. He is sued in his official capacity.

34.     John Ly is, and was at all times relevant to this Complaint, a member of the APB at San Diego State. Mr. Ly's duties include the oversight of the recognition process for student organizations and the application of University policies and regulations to those student organizations. He is sued in his official capacity.

35.     Mica Largo is, and was at all times relevant to this Complaint, a member of the APB at San Diego State. Mr. Largo's duties include the oversight of the recognition process for student organizations and the application of University policies and regulations to those student organizations. He is sued in his official capacity.

36.     Shane Scherer is, and was at all times relevant to this Complaint, a member of the APB at San Diego State. Mr. Scherer's duties include the oversight of the recognition process for student organizations and the application of University policies and regulations to those student organizations. He is sued in his official capacity.

37.     Ben Fisher is, and was at all times relevant to this Complaint, a member of the APB at San Diego State. Mr. Fisher's duties include the oversight of the recognition process for student organizations and the application of University policies and regulations to those student organizations. He is sued in his official capacity.

38.     Sabrina Brown is, and was at all times relevant to this Complaint, a member of the APB at San Diego State. Ms. Brown's duties include the oversight of the recognition process for student organizations and the application of University policies and regulations to those student organizations. She is sued in her official capacity.

39.     Crystal Brandan is, and was at all times relevant to this Complaint, a member of the APB at San Diego State. Ms. Brandan's duties include the oversight of the recognition process for student organizations and the application of University policies and regulations to those student organizations. She is sued in her official capacity.

## FACTUAL ALLEGATIONS

**I.    DEFENDANTS' POLICIES AND PRACTICES**

**California State University Policies on Nondiscrimination**

40.    The members of the Board of Trustees of California State University ("Board") are responsible for adopting rules and regulations to govern the California State University.

41.    The California State University is comprised of twenty-three universities, including Long Beach and San Diego State, each of which is bound by the regulations adopted by the Board.

42.    The Board members have adopted numerous regulations governing the granting of official recognition to student organizations.

43.    Specifically, the Board regulations forbid universities to recognize "any fraternity, sorority, living group, honor society, or other student organization which discriminates on the basis of race, religion, national origin, ethnicity, color, age, gender, marital status, citizenship, sexual orientation, or disability." 5 CA ADC § 41500.

44..    Regulation 5 CA ADC § 41500 prohibits student organizations from selecting members and officers, or denying membership and leadership positions, based on any of the listed categories.

45.    Under Board regulation 5 CA ADC § 41501, universities are prohibited from granting "any benefit, resource, or privilege whatsoever, or allowing the use of campus facilities" to groups that do not comply with § 41500.

46.    Board regulation 5 CA ADC § 41503 compels the president or similar officer of each recognized student organization to provide university officials a signed statement attesting "that the organization has no rules or policies which discriminate on the basis of race, religion, national origin, ethnicity, color, age, gender, marital status, citizenship, sexual orientation, or disability."

47.    This same regulation (§ 41503) requires recognized student organizations to renew this statement of allegiance to the Board's nondiscrimination policy annually.

48.    Board regulation 5 CA ADC § 41504 requires universities to immediately

9

1  withdraw official recognition from any student organization whose national governing body

2  takes "any action which has the effect of penalizing or disciplining any branch or chapter at a

3  campus in order to enforce a policy of discrimination based on race, religion, national origin,

4  ethnicity, color, age, gender, marital status, citizenship, sexual orientation, or disability."

5      49.      By regulation, the Board exempts intercollegiate athletic teams, facilities,

6  competitions, and social fraternities or sororities or other university living groups from the

7  prohibition on gender-based discrimination.  5 CA ADC § 41500 and 41505.

8  **San Diego State University's Policies and Practices**

9      50.      San Diego State encourages students to organize independent, private

10  organizations to advocate ideas on campus.

11      51.      San Diego State encourages the creation of student organizations to increase the

12  range of viewpoints advocated in the marketplace of ideas on campus and to enhance the

13  educational experience for students.

14      52.      San Diego State does not endorse the viewpoints of recognized student

15  organizations.

16      53.      Currently, there are over 150 recognized student organizations at San Diego

17  State.

18      54.      Official recognition at San Diego State entitles a student organization to:

19          a.      use San Diego State's name, logo, and symbols;

20          b.      free publicity in the *Daily Aztec* and Associated Students (AS)

21                  communications;

22          c.      post signs in reserved areas;

23          d.      meet on campus;

24          e.      reserve AS and university facilities and equipment;

25          f.      apply for and receive Aztec Center office or desk space;

26          g.      apply for and receive AS funding;

27          h.      sponsor and publicize on-campus activities and events;

28          i.      maintain an organizational mailbox in the Aztec Center;

        j.      participate in Activities Policies Board ("APB") and university events, including Homecoming, Spring Fiesta, and Welcome Week;

        k.      engage in fundraising activities approved by the APB;

        l.      utilize San Diego State's website for publicity.

55.     San Diego State requires student organizations seeking official recognition to submit a signed "Student Organization On-Campus Recognition Application."

56.     The "Indemnification" clause of the application contains the following disclaimer:

> The actions and opinions of this organization do not necessarily reflect those of the students, staff, faculty, or administration of San Diego State University, Centers for Student Involvement, or the Associated Students of SDSU. Student organizations are also informed that the organization and its members may not represent themselves, or act on behalf of, San Diego State University, Centers for Student Involvement, or the Associated Students of SDSU, its students, faculty, or administration.

57.     The "Officer List" section of the application packet contains a clause that requires the president of the student organization to certify that the organization will "abide by all University and Associated Students regulations published in the Student Organization Handbook . . . including those regulations concerning non-discrimination."

58.     Regarding San Diego State's nondiscrimination policy, the Handbook states:

> On-campus status will not be granted to any student organization whose application . . . restricts membership or eligibility to hold appointed or elected student officer positions in the campus-recognized chapter or group on the basis of race, sex, color, age, religion, national origin, marital status, sexual orientation, physical or mental handicap, ancestry, or medical condition, except as explicitly exempted under federal law.

59.     Further, San Diego State policy compels all new and continuing student organizations to include the above nondiscrimination provision in their bylaws.

60.     San Diego State requires student organizations to renew their on-campus recognition by the third week of the fall semester each year.

61.     Student organizations renewing their on-campus recognition status must submit a "Student Organization On-Campus Recognition Application," sign the clause certifying that

11

the student organization will abide by the university's nondiscrimination policy, and include the university's nondiscrimination provision in their bylaws.

62.     Defendant Activities Policy Board of San Diego State University ("APB") is responsible for granting or denying recognition to student organizations.

63.     The APB applies the above outlined nondiscrimination policies to student organizations.

64.     San Diego State, by and through the Associated Students Council ("ASC"), provides funding to recognized student organizations on campus.

65.     To receive funds, recognized student organizations must apply to the ASC finance board.

66.     The ASC finance board is responsible for determining whether a student organization's funding application is approved.

67.     Upon information and belief, by policy and practice San Diego State and the ASC finance board do not fund the religious expression of student groups, including the activities, speech, and viewpoints of religious student organizations.

68.     Upon information and belief, San Diego State and the ASC finance board fund similar activities, speech, and viewpoints of non-religious groups.

69.     The San Diego State policies outlined above apply to all student organizations, including fraternities and sororities.

**Long Beach State's Policies and Practices**

70.     Long Beach State encourages students to organize independent, private organizations to advocate ideas on campus.

71.     Long Beach State encourages the creation of student organizations to increase the range of viewpoints advocated in the marketplace of ideas on campus and to enhance the educational experience for students.

72.     Long Beach State does not endorse the viewpoints of recognized student organizations.

73.     Currently, there are over 100 recognized student organizations at Long Beach

1    State.

2        74.    Official recognition at Long Beach State entitles a student organization to:

3            a.    reserve Long Beach State facilities, property, services, or equipment;

4            b.    use the Long Beach State name as part of the organization name;

5            c.    access funding from the Associated Students Incorporated;

6            d.    maintain a listing on the Student Life and Development website;

7            e.    place organizational materials in freshman orientation materials;

8            f.    participate in Welcome Week, where each student organization is

9                permitted access to a table to recruit new members;

10           g.    access to numerous university provided avenues to communicate its

11               message on campus;

12           h.    use of a student organization mailbox in the University Student Union;

13           i.    apply for a University Student Union work station in the Robert C.

14               Maxson Student Organization Center.

15       75.    To obtain and maintain access to the foregoing benefits and privileges, Long

16   Beach State requires student organizations to abide by its nondiscrimination policy.

17       76.    Long Beach State prohibits student groups from discriminating on the basis of

18   age, ancestry, color, covered U.S. military service, ethnicity, gender, marital status, medical

19   condition, national origin, physical or mental disability, pregnancy, race, religion, and sexual

20   orientation as set forth in Campus Regs, CSULB Regulations for Campus Activities, Student

21   Organizations and the University Community 2005 (34th edition), Regulation XVIII.

22       77.    Long Beach State's nondiscrimination policy prohibits student organizations

23   from considering religion, sexual orientation, or marital status in the selection of members and

24   officers.

25       78.    Long Beach State requires recognized student organizations to file an

26   Organization Registration Card ("ORC") each year with the Office of Student Life and

27   Development.

28       79.    Among other things, the ORC requires the president of each student

13

1 | organization to certify that "the student members of the above organization at California State
2 | University, Long Beach are free to choose and accept new members without discrimination on
3 | the basis of sex, race, religion, national origin, sexual orientation or disability."

4 |     80.    A student organization that violates or cannot comply with Long Beach State's
5 | nondiscrimination policy is denied official recognition or will have its officially-recognized
6 | status revoked.

7 | **II.    DEFENDANTS DISCRIMINATE AGAINST PLAINTIFF STUDENT ORGANIZATIONS**
8 | **ENCM-SDSU**

9 |     **Theological Commitments**

10 |     81.    Plaintiff ENCM-SDSU is an unincorporated student organization at San Diego
11 | State.

12 |     82.    ENCM-SDSU is an affiliated student chapter of Every Nation Campus
13 | Ministries ("ENCM," formerly "Victory Campus Ministries"), the student arm of Every Nation
14 | Ministries, Inc., a non-profit corporation with its principal offices in Los Angeles, CA.

15 |     83.    The student chapters of ENCM are bound and governed by the Statement of
16 | Faith, policies, and guidelines of ENCM, and are local extensions of ENCM.

17 |     84.    ENCM recently changed its name from Victory Campus Ministries.

18 |     85.    Pursuant to the organization changing its name to ENCM, it circulated a new
19 | student chapter constitution to its affiliated student chapters in July 2005.

20 |     86.    ENCM instructed the leaders of its student chapters to turn in the new
21 | constitution when registering as university student organizations at the beginning of the 2005
22 | school year.

23 |     87.    On approximately August 31, 2005, Trevor Stokes, the President of ENCM-
24 | SDSU, submitted the student organization application packet and the new constitution of
25 | ENCM-SDSU for the purpose of receiving official recognition as a student organization.

26 |     88.    ENCM-SDSU's constitution provides that the student group is committed to:
27 | •    Sharing the knowledge of life in Christ Jesus with the SDSU community;
28 | •    Helping people in their relationship with Jesus Christ and providing them with training for victorious Christian living, leadership, and excellence;

14

- Introducing its members to a local church family and other missions or ministry opportunities;
- Making a positive impact on the SDSU campus by developing students, equipped with biblical solutions to contemporary problems, to serve every facet of the SDSU community and ultimately the world.

89.     Any student is welcome to participate in ENCM-SDSU meetings and other activities, regardless of religion, sexual orientation, marital status, or membership or non-membership in any other protected class.

90.     ENCM-SDSU expects its members and officers to be representatives of ENCM-SDSU and of their Lord and Savior, Jesus Christ, at all times on campus.

91.     Members and officers of ENCM-SDSU routinely interact with the campus community, and are expected to uphold the religious beliefs and viewpoints and model the standards of conduct of ENCM-SDSU in these interactions.

92.     ENCM-SDSU promotes the Christian Gospel message on campus by various means, including outreach efforts to non-Christian students, inviting non-Christians to attend ENCM-SDSU Bible studies and events, and one-on-one evangelism.

93.     ENCM-SDSU believes that to achieve success in reaching its religiously-motivated goals of promoting the Christian faith and Gospel message on San Diego State's campus, it must require its members and officers to adhere to and follow a Christian statement of faith, Christian tenets of belief, and Christian standards of conduct.

94.     Specifically, ENCM-SDSU's constitution states that its members must be "Christians who have professed their faith in the Lord Jesus Christ as defined by the Statement of Faith and who strive to live according to the tenets of the Bible."

95.     Similarly, ENCM-SDSU's constitution states that its officers must "have professed their faith in the Lord Jesus Christ as defined by the Statement of Faith and live according to the tenets of the Bible as explained by the Statement of Faith."

96.     Each member and officer must sign an oath, stating that they "have read, am in agreement with, and believe to be true, the Statement of Faith of Every Nation Campus Ministries," and promising to "strive to uphold godly Christian character and conduct."

97.     ENCM-SDSU's Statement of Faith is as follows:

15

> We believe...
> The Bible to be the inspired, the only infallible, authoritative Word of God.
>       We believe...
> There is one eternal, almighty and perfect God: Father, Son and Holy Spirit.
>       We believe...
> In the deity of our Lord Jesus Christ, in His virgin birth, in His sinless life, in His miracles, in His vicarious and atoning death through His shed blood, in His bodily resurrection, in His ascension to the right hand of the Father, and in His personal return in power and glory.
>       We believe...
> That for the salvation of lost and sinful man, regeneration by the Holy Spirit is essential.
>       We believe...
> In the present ministry of the Holy Spirit by whose indwelling the Christian is enabled to live a godly life.
>       We believe...
> In the resurrection of both the saved and the lost; they that are saved unto the resurrection of life, and they that are lost unto the resurrection of damnation.
>       We believe...
> In the spiritual unity of believers in our Lord Jesus Christ.

98.     ENCM-SDSU's constitution contains the following non-exhaustive list of actions which would violate ENCM-SDSU's Statement of Faith and its standards of Christian conduct for its members and officers: "failure to perform duties, non-attendance, misuse of funds, historical Christian heresy, engaging in sexual activity outside the bounds of marriage, etc."

99.     An officer of ENCM-SDSU can be removed or membership in ENCM-SDSU revoked for conduct that violates Biblical standards of morality or for a violation of the Statement of Faith.

100.    On October 21, 2005, Brett Holman, national director of ENCM, sent an email to all ENCM affiliated student groups regarding sexual morality standards and membership in ENCM.

101.    Attached to this email was a document entitled "Statement on Sexual Morality Standards."

102.    This Statement communicated ENCM's position on sexual morality and how

16

1 | that position relates to membership and leadership in student chapters.

2 |     103.   ENCM-SDSU is bound by this Statement.

3 |     104.   The Statement explains that sexual conduct is appropriate only when it takes
4 | place between a man and woman within the marriage relationship.  Hence, individuals who
5 | advocate the propriety of sex outside the bounds of marriage, whether heterosexual or
6 | homosexual, or unrepentantly engage in such sex acts, whether heterosexual or homosexual,
7 | are not permitted to be members or officers of ENCM-SDSU.

8 |     105.   The Statement further explains that same-sex attraction is not in accordance with
9 | God's original design and intention.  ENCM believes that God created male and female, with a
10 | normative sexual inclination toward persons of the opposite sex.  Therefore, individuals who
11 | believe they are innately homosexual, or advocate the viewpoint that homosexuality is a natural
12 | part of God's created order, are not permitted to be members or officers of ENCM-SDSU.

13 |     106.   An individual who may have engaged in homosexual conduct in the past but has
14 | genuinely repented of that conduct would not be prevented from becoming a member or
15 | serving as an officer of ENCM-SDSU based on that past conduct.

16 |     107.   Based on its Statement of Faith and Statement on Sexual Morality Standards,
17 | ENCM-SDSU recognizes marriage as being only between one man and one woman.  To the
18 | extent "marital status," as used in the Defendants' nondiscrimination policies, contemplates
19 | relationships beyond that of one man and one woman in holy matrimony, ENCM-SDSU cannot
20 | comply with that term without violating its religious beliefs and rights of conscience.

21 |     108.   It would contradict ENCM-SDSU's expressive and associational purpose to
22 | permit individuals who do not agree with and follow its Statement of Faith, tenets of belief, and
23 | Christian standards of conduct to serve as officers or members.

24 |     109.   Permitting leadership and membership to those who do not agree with and
25 | follow ENCM-SDSU's Statement of Faith, tenets of belief, and Christian standards of conduct
26 | would communicate a message which ENCM-SDSU opposes.

27 |     110.   Because of its sincerely held religious beliefs, ENCM-SDSU objects to the
28 | nondiscrimination policies of the Board of Trustees of the California State University and San

1   Diego State, which require ENCM-SDSU to open its membership and leadership to all students

2   regardless of religion, sexual orientation, and marital status.

3       111.    ENCM-SDSU does not object to any of the other forms of discrimination

4   prohibited by the policies of the Board of Trustees of the California State University and San

5   Diego State.

6       112.    Because of its sincerely held religious beliefs, ENCM-SDSU objects to

7   communicating a university-imposed ideological message in its organizational documents of

8   acceptance or approval of alternative religious beliefs, of alternative views on sexuality and the

9   practice thereof, and of conduct that undermines the Christian message it advocates and

10  lifestyle it models on campus.

11  **Denial of Recognition**

12      113.    Between 1999 and the fall 2005 semester, ENCM-SDSU had been a recognized

13  student organization under the name Victory Campus Fellowship, and had enjoyed access to all

14  the rights and privileges pertaining thereto.

15      114.    Recognized student organizations at San Diego State must renew their

16  recognized status at the beginning of the fall semester each year.

17      115.    On approximately August 22, 2005, Trevor Stokes, in his capacity as president

18  of Victory Campus Fellowship ("VCF"), turned in the VCF Constitution and accompanying

19  application for renewal of recognized status.

20      116.    VCF received approval as a recognized student organization.

21      117.    Shortly thereafter Mr. Stokes received notification from ENCM that he needed

22  to change his organization's name from VCF to ENCM and submit a new constitution.

23      118.    On approximately August 31, 2005, Mr. Stokes submitted a new "Student

24  Organization On-Campus Recognition Application" for ENCM-SDSU and a new constitution

25  for approval as a recognized student organization.

26      119.    Mr. Stokes repeatedly checked on the status of the application with the Centers

27  for Student Involvement but was warned by numerous individuals, including Kelly Witt and

28  Alicia Milan, that the group's requirement that members and officers sign and abide by a

1   Christian statement of faith likely violated San Diego State's nondiscrimination policy.

2         120.   On October 17, 2005, the Activities Policy Board ("APB") denied recognized

3   status to ENCM-SDSU because its constitution requires members to be Christians.   The APB

4   minutes state:

5   > There was discussion about the proposed new organization "Every Nation
6   > Campus Ministries" and their membership criteria that specifically states that the
7   > members will be Christians.   The group was formerly known as "Victory
8   > Campus Fellowship".   Title V, Section 41500 of the California Code of
9   > Regulations prohibits restrictions on membership in public university student
10  > groups based on race, religion, ethnicity, and other protected classes.   Granting
11  > this proposed student organization would be in direct violation of this regulation.

10        121.   On October 20, 2005, Mr. Stokes received an email from Dr. Evette Castillo

11  offering to set a meeting to discuss why ENCM-SDSU had been denied recognized status.

12        122.   Mr. Stokes, along with other representatives of ENCM-SDSU, met with Dr.

13  Castillo on October 26, 2005.

14        123.   At this meeting, Dr. Castillo explained that 5 CA ADC § 41500 prohibits SDSU

15  from recognizing student organizations that discriminate on the basis of certain categories,

16  including religion.

17        124.   Dr. Castillo said that other Christian groups receive recognized status because

18  they do not explicitly state that members and officers must be Christian, and suggested that

19  ENCM-SDSU could do the same and likely receive recognition.

20        125.   Dr. Castillo said that ENCM-SDSU was denied recognized status because

21  Article III, Section C of its constitution requires members to be Christians and to sign and abide

22  by ENCM-SDSU's Statement of Faith.

23        126.   ENCM-SDSU cannot abandon its requirement that members and officers be

24  Christians without violating its orthodox, Christian beliefs, and thus shortly after the meeting

25  with Dr. Castillo Mr. Stokes sent an email to the Centers for Student Involvement disbanding

26  Victory Campus Fellowship.

27        127.   Presently, ENCM-SDSU is operating as an unrecognized student group, and has

28  been denied access to all the benefits and privileges accorded to recognized groups, including

access to a meeting space on campus.

**Denial of Funding**

128.　In March 2005, VCF sought funding through the Associated Students Council ("ASC").

129.　ENCM-SDSU formerly operated as VCF, and at the time VCF sought funding in 2005 it was a recognized student group.

130.　VCF sought funding to cover the travel expenses for several of its members to attend a national conference hosted by Victory Campus Ministries.

131.　The ASC finance board denied VCF's funding request based on San Diego State's and the ASC's policy forbidding the use of Associated Students funds to pay for the religious expression of student organizations.

**ADX**

**Theological Commitments**

132.　The National Fraternity of Alpha Delta Chi is a national women's Christian fraternal organization composed of local chapters at numerous universities across the nation.

133.　The national organization's purposes include strengthening the Christian spiritual lives and testimonies of its members resulting in service and outreach to others, promoting high scholastic standing among its members, and providing fellowship among university students living a Christian lifestyle and active in Christ's service.

134.　Plaintiff Alpha Delta Chi-Delta Chapter ("ADX") is the local chapter of the national organization at San Diego State.

135.　ADX is governed by the constitution of the national organization, and by local bylaws.

136.　ADX's bylaws state its purposes as providing Christian social fellowship among San Diego State women, promoting high scholastic standards among its members, and promoting self-discipline and knowledge in areas of Christian growth, finances, relationships, and group functions.

137.　ADX derives each of these goals from the religious beliefs of its members.

138.　ADX's constitution and bylaws contain thirteen membership requirements,

20

1   including:

2          a.     personal acceptance of Jesus Christ as Savior and Lord;

3          b.     active participation in Christian service;

4          c.     regular attendance or membership in an evangelical church;

5          d.     interest in leading others to Christ;

6          e.     willingness to avoid situations which would cause one's sister or brother

7                  to stumble;

8          f.     willingness to abstain from sexual relations until marriage;

9          g.     willingness to abstain from alcohol in circumstances where the Christian

10                 witness would be adversely affected.

11      139.    ADX's local bylaws state that to be eligible for an elective office, candidates

12  must have an "[a]ctive commitment to Jesus Christ as Lord and Savior."

13      140.    ADX expects its members and officers to be representatives of ADX and of their

14  Lord and Savior, Jesus Christ, at all times on campus.

15      141.    Members and officers of ADX routinely interact with the campus community,

16  and are expected to uphold the religious beliefs and viewpoints and model the standards of

17  conduct of ADX in these interactions.

18      142.    ADX promotes the Christian Gospel message on campus by various means,

19  including outreach efforts to non-Christian sorority members, inviting non-Christians to ADX

20  worship and devotional events, and one-on-one evangelism.

21      143.    ADX believes that to achieve success in reaching its religiously-motivated

22  purposes and goals it must require its members and officers to have a personal relationship with

23  Jesus Christ and adhere to and follow Christian tenets of belief and standards of conduct.

24      144.    It would be a contradiction of ADX's expressive and associational purpose to

25  permit individuals who do not agree with and follow ADX's Christian tenets of belief and

26  standards of conduct to serve as officers or members.

27      145.    Permitting leadership and membership to those who do not agree with and

28  follow ADX's Christian tenets of faith and standards of conduct would communicate a message

21

1   which ADX opposes.

2      146.   ADX objects to the nondiscrimination policies of the Board of Trustees of the

3   California State University and San Diego State, which would require it to open its membership

4   and officer positions to all students regardless of religion, sexual orientation, or marital status.

5      147.   ADX's objections to these nondiscrimination policies derive from its' members

6   sincerely held religious beliefs.

7      148.   ADX does not object to any of the other forms of discrimination prohibited by

8   the policies of the Board of Trustees of the California State University and San Diego State.

9      149.   Based on the Holy Scriptures, ADX believes that sexual conduct is inappropriate

10  unless it takes place between a man and a woman within the marriage relationship.

11     150.   Hence, ADX would exclude from membership, or revoke the membership or

12  leadership position of, an individual who unrepentantly engages in sexual conduct, whether

13  heterosexual or homosexual, outside of the marriage relationship.

14     151.   Based on the Holy Scriptures, ADX believes that God created people male and

15  female, and with a normative sexual drive for the opposite sex.  Thus, ADX rejects the

16  viewpoint that people are created homosexual, and would exclude from membership, or revoke

17  the membership or leadership position of, an individual who unrepentantly believes they were

18  created homosexual, or unrepentantly advocates the viewpoint that homosexuality is a natural

19  part of God's created order.

20     152.   Based on the Holy Scriptures, ADX recognizes marriage as being only between

21  one man and one woman.   To the extent "marital status," as used in the Defendants'

22  nondiscrimination policies, contemplates relationships beyond that of one man and one woman

23  in holy matrimony, ADX cannot comply with that provision without violating its Christian

24  beliefs.

25     153.   Because of its sincerely held religious beliefs, ADX objects to communicating a

26  university-imposed ideological message in its organizational documents of acceptance or

27  approval of alternative religious beliefs, of alternative views on sexuality and the practice

28  thereof, and of conduct that undermines the Christian message it advocates and lifestyle it

22

1   models on campus.

2      **Denial of Recognition**

3      154.    On approximately August 10, 2005, Melissa Travis, president of ADX,

4   submitted a "Student Organizations On-Campus Recognition Application" and a copy of

5   ADX's constitution and bylaws for the purpose of receiving official recognition.

6      155.    On September 26, 2005, Defendant Doug Case sent Ms. Travis a letter denying

7   ADX official recognition.

8      156.    Mr. Case's letter stated that ADX's requirement that members and officers have

9   a personal commitment to Jesus Christ as Lord and Savior "conflict with the requirement that

10   on-campus organizations not discriminate in membership or membership privileges on the

11   basis of religion."

12      157.    Further, the letter stated that regulation 5 CA ADC § 41500 prohibits the Center

13   for Fraternity and Sorority Life from granting recognition "to a fraternity or sorority that

14   requires members and/or officers to profess a specific religious belief.  Accordingly, we must

15   deny your application."

16      158.    Mr. Case concluded his letter by listing the benefits and rights ADX loses as a

17   result of not being a recognized group:

18        Organizations without on-campus status may not use the name of the University,
19        may not meet on campus and reserve University facilities free or at reduced
           rates, may not engage in fund raising on campus, may not post signs in areas
20        reserved for organizations with on-campus status, and may not receive other
           privileges of on-campus status as defined in the SDSU Student Organization
21        Handbook.

22      159.    ADX has sought recognition numerous times since reestablishing its chapter at

23   San Diego State in 1996, and has been denied recognition each time for the same reasons stated

24   in Mr. Case's September 26, 2005 letter.

25   **AGO**

26   **Theological Commitments**

27      160.    Alpha Gamma Omega Fraternity is a national men's Christian fraternal

28   organization.

1      161.    The Epsilon Chapter of Alpha Gamma Omega Fraternity ("AGO") is the local

2 chapter of the national organization at San Diego State University.

3      162.    The local chapters of Alpha Gamma Omega Fraternity are bound by the

4 constitution of the national organization.

5      163.    The local chapters are permitted to adopt bylaws not inconsistent with the

6 national constitution. AGO has adopted such bylaws.

7      164.    The purposes of the Alpha Gamma Omega Fraternity and of its local chapters

8 are to:

9           a.     win others to a saving knowledge of Jesus Christ;

10           b.     promote Christian fellowship;

11           c.     present Christian ideals in word and deed;

12           d.     search reverently for the truth;

13           e.     uphold the traditions and ideals of the university, and;

14           f.     deepen the spiritual lives of the members.

15      165.    AGO believes that to achieve these religiously-motivated purposes, it must

16 require its officers to adhere to and follow a Christian statement of faith, Christian tenets of

17 belief, and Christian standards of conduct.

18      166.    AGO believes that to preserve itself as a Christ-centered fraternity, each chapter

19 must have Christian leadership dedicated to godliness.

20      167.    To this end, AGO requires its officers to submit a "Personal Statement of Faith

21 and Practice," which requires the aspiring officer to provide a written statement of his Christian

22 beliefs and experiences and to sign the Statement of Faith of AGO.

23      168.    The "Personal Statement of Faith and Practice" must include the aspiring

24 officer's views on Jesus Christ, the Bible, the Christian Church, and eternity.

25      169.    It also must include the aspiring officer's personal Christian testimony, current

26 spiritual life practices, level of involvement in a local church, efforts at evangelism, and views

27 on spiritual leadership.

28      170.    AGO's Statement of Faith is as follows:

24

1   I hereby publicly confess my belief in the Lord Jesus Christ as God and only
    Savior and give witness to the regenerating power of the Holy Spirit in my life.
2   I will make it a purpose of my life to continue in fellowship with God through
    prayer and reading of the Holy Scriptures.
3

4   171.   To be eligible for an AGO officer position, an aspiring officer's "Personal

5   Statement of Faith and Practice" must be approved by the local chapter's Chapter Advisor and

6   the national Credentials and Elections Committee.

7   172.   The Chapter Advisor and the Credentials and Elections Committee will only

8   approve candidates for office whose "Personal Statement of Faith and Practice" is consistent

9   with orthodox Christian beliefs.

10   173.   AGO expects its officers to uphold the Christian beliefs, viewpoints, and

11   standards of conduct of AGO at all times on campus.

12   174.   Officers of AGO are expected to live, before their local chapter and the world,

13   lives which place Jesus Christ at their center, thereby setting an example for others to follow.

14   175.   All active members of AGO are expected to live their lives according to the

15   Christian standards of conduct of AGO.

16   176.   AGO promotes its religious beliefs and viewpoints and the Christian Gospel

17   message on campus by various means, including outreach efforts to non-Christian fraternity

18   members, inviting non-Christians to AGO events, and one-on-one evangelism.

19   177.   It would be a contradiction of AGO's expressive and associational purpose to

20   permit individuals who do not agree with and follow AGO's Christian tenets of belief and

21   standards of conduct to serve as officers.

22   178.   Extending leadership positions to those who do not agree with and follow

23   AGO's Christian tenets of faith and standards of conduct would communicate a message which

24   AGO opposes.

25   179.   AGO objects to the nondiscrimination policies of the Board of Trustees of the

26   California State University and San Diego State, which would require it to open its officer

27   positions to all students regardless of religion, sexual orientation, or marital status.

28   180.   AGO's objections to these nondiscrimination policies derive from its' members

25

1    sincerely held religious beliefs.

2       181.    AGO does not object to any of the other forms of discrimination prohibited by

3    the policies of the Board of Trustees of the California State University and San Diego State.

4       182.    AGO's constitution states that "[t]he moral standards of members as individuals

5    and chapters as groups shall at all times be consistent with our Statement of Faith as

6    Christians."

7       183.    As a Christian organization, and in accordance with its Statement of Faith, AGO

8    derives its standards of conduct from the Holy Scriptures.

9       184.    Based on the Holy Scriptures, AGO believes that sexual conduct is inappropriate

10    unless it takes place between a man and a woman within the marriage relationship.

11       185.    Hence, AGO would exclude from membership, or revoke the membership or

12    leadership position of, an individual who unrepentantly engages in sexual conduct, whether

13    heterosexual or homosexual, outside of the marriage relationship.

14       186.    Based on the Holy Scriptures, AGO believes that God created people male and

15    female, and with a normative sexual drive for the opposite sex. Thus, AGO rejects the

16    viewpoint that people are created homosexual, and would exclude from membership, or revoke

17    the membership or leadership position of, an individual who unrepentantly believes they were

18    created homosexual, or unrepentantly advocates the viewpoint that homosexuality is a natural

19    part of God's created order.

20       187.    Based on the Holy Scriptures, AGO recognizes marriage as being only between

21    one man and one woman. To the extent "marital status," as used in the Defendants'

22    nondiscrimination policies, contemplates relationships beyond that of one man and one woman

23    in holy matrimony, AGO cannot comply with that provision without violating its Christian

24    beliefs.

25       188.    Because of its sincerely held religious beliefs, AGO objects to communicating a

26    university-imposed ideological message in its organizational documents of acceptance or

27    approval of alternative religious beliefs, of alternative views on sexuality and the practice

28    thereof, and of conduct that undermines the Christian message it advocates and lifestyle it

1    models on campus.

2         **Denial of Recognition**

3         189.    AGO most recently sought official recognition at San Diego State in the fall

4    semester of 2004.

5         190.    AGO submitted the required documents for recognition and its constitution and

6    bylaws to the Center for Fraternity and Sorority Life.

7         191.    Defendant Douglas Case, Coordinator of Fraternity and Sorority Life, denied

8    recognition to AGO because it requires its officers to be Christians and sign and abide by the

9    Statement of Faith of AGO.

10        192.    AGO has sought recognition numerous times since reestablishing its chapter at

11   San Diego State in 1979, and has been denied recognition each time because it requires its

12   officers to be Christians and sign and abide by AGO's Statement of Faith.

13   **ENCM-LB**

14        **Theological Commitments**

15        193.    Plaintiff ENCM-LB is an unincorporated student organization at Long Beach

16   State.

17        194.    ENCM-LB is an affiliated student chapter of Every Nation Campus Ministries,

18   the student arm of Every Nation Ministries, Inc., a non-profit corporation with its principal

19   offices in Los Angeles, CA.

20        195.    The student chapters of ENCM are bound and governed by the Statement of

21   Faith, policies, and guidelines of ENCM, and are local extensions of ENCM.

22        196.    ENCM recently changed its name from Victory Campus Ministries.

23        197.    Pursuant to the organization changing its name to ENCM, it circulated a new

24   student chapter constitution to its affiliated student chapters in July 2005.

25        198.    ENCM instructed the leaders of its student chapters to turn in the new

26   constitution when registering as university student organizations at the beginning of the 2005

27   school year.

28        199.    On approximately August 15, 2005, Haley Hawthorne, the President of ENCM-

27

LB, submitted the new constitution and bylaws of ENCM-LB for the purpose of receiving official recognition as a student organization.

200.   ENCM-LB's constitution provides that the student group is committed to:

- Sharing the knowledge of life in Christ Jesus with the LB community;
- Helping people in their relationship with Jesus Christ and providing them with training for victorious Christian living, leadership, and excellence;
- Introducing its members to a local church family and other missions or ministry opportunities;
- Making a positive impact on the LB campus by developing students, equipped with biblical solutions to contemporary problems, to serve every facet of the LB community and ultimately the world.

201.   Any student is welcome to participate in ENCM-LB meetings and other activities, regardless of religion, sexual orientation, marital status, or membership or non-membership in any other protected class.

202.   ENCM-LB expects its members and officers to be representatives of ENCM-LB and of their Lord and Savior, Jesus Christ, at all times on campus.

203.   Members and officers of ENCM-LB routinely interact with the campus community, and are expected to uphold the religious beliefs and viewpoints and model the standards of conduct of ENCM-LB in these interactions.

204.   ENCM-LB promotes the Christian Gospel message on campus through various means, including outreach efforts to non-Christian students, inviting non-Christians to attend ENCM-LB Bible studies and events, and one-on-one evangelism.

205.   ENCM-LB believes that to succeed in promoting its views of the Christian faith and Gospel message on Long Beach State's campus, it must require its members and officers to adhere to and follow a Christian statement of faith, Christian tenets of belief, and Christian standards of conduct.

206.   Therefore, ENCM-LB's constitution states that its members must be "Christians who have professed their faith in the Lord Jesus Christ as defined by the Statement of Faith and who strive to live according to the tenets of the Bible."

207.   Similarly, ENCM-LB's constitution states that its officers must "have professed their faith in the Lord Jesus Christ as defined by the Statement of Faith and live according to

28

1    the tenets of the Bible as explained by the Statement of Faith."

2         208.    Each member and officer must sign an oath, stating that they "have read, am in

3    agreement with, and believe to be true, the Statement of Faith of Every Nation Campus

4    Ministries," and promising to "strive to uphold godly Christian character and conduct."

5         209.    ENCM-LB's Statement of Faith is as follows:

6              We believe...
               The Bible to be the inspired, the only infallible, authoritative Word of
7              God.
8              We believe...
               There is one eternal, almighty and perfect God: Father, Son and Holy
9              Spirit.
               We believe...
10             In the deity of our Lord Jesus Christ, in His virgin birth, in His sinless life,
11             in His miracles, in His vicarious and atoning death through His shed
               blood, in His bodily resurrection, in His ascension to the right hand of the
12             Father, and in His personal return in power and glory.
               We believe...
13             That for the salvation of lost and sinful man, regeneration by the Holy
14             Spirit is essential.
               We believe...
15             In the present ministry of the Holy Spirit by whose indwelling the
               Christian is enabled to live a godly life.
16             We believe...
17             In the resurrection of both the saved and the lost; they that are saved unto
               the resurrection of life, and they that are lost unto the resurrection of
18             damnation.
19             We believe...
               In the spiritual unity of believers in our Lord Jesus Christ.
20
         210.    ENCM-LB's constitution contains the following non-exhaustive list of actions
21
     which would violate ENCM-LB's Statement of Faith and its standards of Christian conduct for
22
     its members and officers: "failure to perform duties, non-attendance, misuse of funds, historical
23
     Christian heresy, engaging in sexual activity outside the bounds of marriage, etc."
24
         211.    An officer of ENCM-LB can be removed or membership in ENCM-LB revoked
25
     for conduct that violates Biblical standards of morality or for a violation of the Statement of
26
     Faith.
27
         212.    On October 21, 2005, Brett Holman, national director of ENCM, sent an email
28
     to all ENCM affiliated student groups regarding sexual morality standards and membership in

29

1  ENCM.

2      213.    Attached to Mr. Holman's email was a document entitled "Statement on Sexual

3  Morality Standards."

4      214.    This Statement communicated ENCM's position on sexual morality and how

5  that position relates to membership and leadership in student chapters.

6      215.    ENCM-LB is bound by this Statement.

7      216.    The Statement explains that sexual conduct is appropriate only when it takes

8  place between a man and woman within the marriage relationship.  Hence, individuals who

9  advocate the propriety of sex outside the bounds of marriage, whether heterosexual or

10  homosexual, or unrepentantly engage in such sex acts, whether heterosexual or homosexual,

11  are not permitted to be members or officers of ENCM-LB.

12      217.    The Statement further explains that same-sex attraction is not in accordance with

13  God's original design and intention.  ENCM believes that God created male and female, with a

14  normative sexual inclination toward persons of the opposite sex.  Therefore, individuals who

15  believe they are innately homosexual, or advocate the viewpoint that homosexuality is a natural

16  part of God's created order, are not permitted to be members or officers of ENCM-LB.

17      218.    An individual who may have engaged in homosexual conduct in the past but has

18  genuinely repented of that conduct would not be prevented from becoming a member or

19  serving as an officer of ENCM-LB based on that past conduct.

20      219.    Based on its Statement of Faith and Statement on Sexual Morality Standards,

21  ENCM-LB recognizes marriage as being only between one man and one woman.  To the extent

22  "marital status," as used in the Defendants' nondiscrimination policies, contemplates

23  relationships beyond that of one man and one woman in holy matrimony, ENCM-LB cannot

24  comply with that term without violating its religious beliefs and rights of conscience.

25      220.    It would contradict Plaintiffs' expressive and associational purpose to permit

26  individuals who do not agree with and follow ENCM-LB's Statement of Faith, tenets of belief,

27  and Christian standards of conduct to be members or serve as officers.

28      221.    Permitting leadership and membership to those who do not agree with and

30

1  follow ENCM-LB's Statement of Faith, tenets of belief, and Christian standards of conduct

2  would dilute or destroy the Christian message which ENCM-LB provides.

3      222.    Because of its sincerely held religious beliefs, ENCM-LB objects to the

4  nondiscrimination policies of the Board of Trustees of the California State University and Long

5  Beach State, which require ENCM-LB to open its membership and leadership to all students

6  regardless of religion, sexual orientation, and marital status.

7      223.    ENCM-LB does not object to any of the other forms of discrimination

8  prohibited by the policies of the Board of Trustees of the California State University and Long

9  Beach State.

10      224.    Because of its sincerely held religious beliefs, ENCM-LB objects to

11  communicating a university-imposed ideological message in its organizational documents of

12  acceptance or approval of alternative religious beliefs, of alternative views on sexuality and the

13  practice thereof, and of conduct that undermines the Christian message it advocates and

14  lifestyle it models on campus.

15  **Denial of Recognition**

16      225.    Between 1999 and the fall 2005 semester, ENCM-LB was a recognized student

17  organization under the name Victory Campus Fellowship, and enjoyed access to all the rights

18  and privileges pertaining thereto.

19      226.    On approximately August 15, 2005, Haley Hawthorne, as President of Victory

20  Campus Fellowship at Long Beach State, submitted a letter to the Office of Student Life and

21  Development explaining that her group had changed its name to Every Nation Campus

22  Ministries at Long Beach State University.

23      227.    Ms. Hawthorne attached the new constitution and bylaws for ENCM-LB to her

24  August 15 letter for the purpose of receiving official recognition as a student organization.

25      228.    On approximately August 25, 2005, Ms. Hawthorne had a meeting with

26  Defendant Jeffrey Klaus regarding problems he had identified in the ENCM-LB constitution

27  and bylaws.

28      229.    At this meeting, Mr. Klaus informed Ms. Hawthorne that ENCM-LB's

31

1   constitution and bylaws violated Long Beach State's nondiscrimination policy because they

2   required members and officers to be Christians, and because the group's nondiscrimination

3   provision did not include the term "sexual orientation."

4       230.    Mr. Klaus provided Ms. Hawthorne a copy of the constitution and bylaws

5   containing his edit marks.

6       231.    Ms. Hawthorne changed ENCM-LB's constitution and bylaws based on Mr.

7   Klaus's suggestions, to the extent such changes could be made without violating ENCM-LB's

8   religious beliefs, and resubmitted the documents in mid-September with a cover letter

9   explaining the changes she made and the changes she refused to make to the constitution and

10  bylaws.

11      232.    In this letter, Ms. Hawthorne explained that ENCM-LB could not relinquish its

12  requirement that members and officers sign and abide by its Statement of Faith because "[w]e

13  are a Christian organization and believe that we have the right to determine our own

14  membership and leadership."

15      233.    Ms. Hawthorne also explained that ENCM-LB would retain its requirement that

16  members and officers not engage in sexual conduct outside the bounds of marriage.

17      234.    On October 4, 2005, Ms. Hawthorne received an email from Mr. Klaus outlining

18  additional changes that needed to be made to the documents.

19      235.    Because none of the requested revisions undercut ENCM-LB's religious beliefs,

20  Ms. Hawthorne revised the constitution and bylaws according to Mr. Klaus's suggestions and

21  resubmitted them to Mr. Klaus via email on November 1, 2005.

22      236.    On November 3, 2005, Mr. Klaus emailed Ms. Hawthorne with additional

23  revisions that needed to be made.

24      237.    In this email, Mr. Klaus informed Ms. Hawthorne "[i]f you are unwilling to

25  make the changes in your nondiscrimination clause to include religion and sexual orientation, I

26  will not be able to approve your Constitution and Bylaws.  I cannot recognize an organization

27  who [sic] plans to discriminate based on a students religion and/or sexual orientation."

28      238.    Ms. Hawthorne received an email from Mr. Klaus on November 7, 2005,

32

1    inquiring if she wanted to meet to discuss the status of ENCM-LB, stating "I just want there to

2    be clarity."

3    239.    On November 8, 2005, Ms. Hawthorne replied by email, stating:

4    Things seem very clear.  Your Nov 3 email made it clear that the university will
not recognize our organization if we will not include the terms 'religion' and
5    'sexual orientation' in our non-discrimination clause.  At the same time, I made
6    it clear in a previous email that our group refuses to include these terms because
doing so would violate our religious beliefs.  As I explained previously, we are a
7    Christian organization and believe that we have the right to determine who can
be members and leaders in our group.  As a result of our irreconcilable positions,
8    we view your Nov 3 email as a final denial of recognized status for our student
9    group.  We are simply unwilling to forgo our religious beliefs and make the
changes to our non-discrimination clause that the university requires.

10
11    240.    Ms. Hawthorne also informed Mr. Klaus that ENCM-LB had no objections to

12    the other revisions Mr. Klaus had recommended.

13    241.    Finally, Ms. Hawthorne informed Mr. Klaus in her November 8 email that she

14    was disbanding Victory Campus Fellowship and that her group would no longer be operating

15    under that group's constitution.

16    242.    Seeking to comply with university policies, which prohibit un-recognized

17    groups access to the services, facilities, and benefits afforded to recognized groups, ENCM-LB

18    has discontinued use of a lecture hall for its weekly Bible meetings that it had reserved for the

19    entire semester as Victory Campus Fellowship.

20    **III.    PLAINTIFFS' DESIRE NOT TO COMMUNICATE GOVERNMENT-DICTATED MESSAGES**

21    243.    The Plaintiffs adhere to and advocate Christian beliefs and viewpoints which

22    they believe are divinely-mandated, universally applicable theological and ethical propositions.

23    244.    Plaintiffs seek to maintain fidelity to these beliefs and viewpoints in their public

24    as well as private expressions.

25    245.    The policies of the Board of Trustees of the California State University, of Long

26    Beach State, and of San Diego State, compel the Plaintiffs to send a message regarding

27    nondiscrimination that is contrary to their Christian beliefs.

28    246.    Board of Trustees regulation 5 CA ADC § 41503 compels the president or
similar officer of each recognized student organization to provide university officials a signed

33

1    statement attesting "that the organization has no rules or policies which discriminate on the
2    basis of race, religion, national origin, ethnicity, color, age, gender, marital status, citizenship,
3    sexual orientation, or disability."

4         247.    San Diego State requires the president of each recognized student group to sign
5    a document, on a yearly basis, certifying that the organization will abide by the university's
6    policies on nondiscrimination.

7         248.    Further, San Diego State policy compels every recognized student group to
8    include the language of the university's nondiscrimination policy in its bylaws.

9         249.    Long Beach State requires the president of each recognized student group to
10   sign a document, on a yearly basis, certifying that the organization will abide by the
11   university's policies on nondiscrimination.

12        250.    In denying recognition to ENCM-LB, Jeffrey Klaus, Director of Student Life
13   and Development at Long Beach State, informed the president of ENCM-LB that the
14   nondiscrimination clause in the group's constitution must include the terms "religion" and
15   "sexual orientation" for ENCM-LB to receive recognized status.

16        251.    Mr. Klaus provided Ms. Hawthorne a version of ENCM-LB's constitution that
17   he had edited with Microsoft Word's "track changes" function in which he added the terms
18   "religion" and "sexual orientation" to ENCM-LB's nondiscrimination clause.

19        252.    The documents in which Defendants require student organizations to provide
20   written assent to their nondiscrimination policies are available to the public upon request.

21        253.    Student group constitutions, bylaws, and applications for official recognition are
22   kept on file by Long Beach and San Diego State universities and available for review by any
23   member of the public.

24        254.    Many of the faculty, staff, and students of Long Beach and San Diego State as
25   well as other individuals are aware both of the content of the Defendants' nondiscrimination
26   policies, and that officially recognized student groups are those that have signed assent to the
27   nondiscrimination policy and/or have included in their organization governing documents an
28   announcement of nondiscrimination according to the terms of the Defendants' policies.

34

255.    A list of those student groups which are officially recognized at Long Beach and San Diego State are listed on the websites of the respective universities and in other university publications available to the public.

256.    Plaintiffs oppose portions of the message communicated by the nondiscrimination statement that Defendants require all officially recognized student groups to publicly speak through signed affirmation and/or inclusion in the content of their constitutions and/or bylaws.

257.    Plaintiffs object to the requirement compelling them to speak a message with which they disagree as a condition to being granted officially recognized status.

**ALLEGATIONS OF LAW**

258.    Each and all of the acts herein alleged of the Defendants, their officers, agents, servants, employees, or persons acting at their behest or direction, were done and are continuing to be done under the color of state law, including the statutes, regulations, customs, policies, and usages of the State of California.

259.    By enacting and enforcing nondiscrimination policies that forbid Plaintiffs from selecting members and/or officers on the basis of religion, sexual orientation, and marital status, and withholding from Plaintiffs the status and benefits of a recognized student organization, Defendants have engaged in discrimination against Plaintiffs based on the content and viewpoint of their speech and sent a message of exclusion and disfavor of Plaintiffs and their message, resulting in a chilling impact on Plaintiffs' efforts at recruitment, association, and dissemination of their message.

260.    Unless and until enforcement of the Defendants' policies on nondiscrimination are enjoined, Plaintiffs and similarly situated religious organizations will suffer and continue to suffer irreparable harm to their federal constitutional rights to free association, freedom of speech, free exercise of religion, due process, and equal protection.

35

1

## CLAIMS FOR RELIEF

2

### FIRST CLAIM: VIOLATION OF THE RIGHT TO EXPRESSIVE ASSOCIATION UNDER THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

3

4          261.    The allegations contained in all preceding paragraphs are realleged and

5    incorporated herein by reference.

6          262.    The First Amendment of the United States Constitution, incorporated and made

7    applicable to the states by the Fourteenth Amendment to the United States Constitution,

8    recognizes and protects the right to expressive association.

9          263.    The plaintiff student organizations are expressive associations whose ability to

10   advocate their Christian message and viewpoints on campus would be significantly affected if

11   forced to accept as members and/or officers individuals who do not agree with their Christian

12   tenets of belief and standards of conduct.

13         264.    The Defendants' nondiscrimination policies violate the plaintiff student groups'

14   right to association by compelling them to accept as members and officers individuals who do

15   not agree with their Christian tenets of belief and standards of conduct to receive official

16   University recognition, and the rights, benefits, and privileges attendant thereto, including

17   access to the primary means of communicating its message and viewpoints on campus.

18         265.    Further, Defendants violated the plaintiff student groups' right to association by

19   denying them status as registered student organizations and the rights, privileges, and benefits

20   attendant thereto, based solely on the groups' exclusionary membership and leadership policies.

21         266.    The Defendants have no compelling reason that would justify the burden

22   imposed upon the plaintiff student groups' right to association.

23         267.    Defendants' nondiscrimination policies forbidding officially-recognized student

24   organizations to discriminate on the basis of religion, sexual orientation, and marital status

25   violate the right to association of all student groups that exercise that right by selecting

26   members and officers based on their religious beliefs, sexual orientation, and marital status, and

27   thus is facially invalid under the First and Fourteenth Amendments to the United States

28   Constitution.

           268.    WHEREFORE, Plaintiffs respectfully request that the Court grant the relief set

36

forth hereinafter in the prayer for relief.

**SECOND CLAIM: VIOLATION OF THE FREEDOM OF SPEECH CLAUSE OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION**

269.    The allegations contained in all preceding paragraphs are realleged and incorporated herein by reference.

270.    The Defendants' nondiscrimination policies violate Plaintiffs' right to freedom of speech by allowing all student organizations to require members and officers to agree with their beliefs and purposes, except religious groups.

271.    The Defendants' nondiscrimination policies violate Plaintiffs' right to freedom of speech by conditioning the rights, benefits, and privileges attendant to university recognition on Plaintiffs' willingness to communicate a message with which they disagree in their organizational documents and through signed assent in other public documents.

272.    The Defendants' nondiscrimination policies do not compel nonreligious student clubs to express a message with which they disagree to receive official recognition and the rights, benefits, and privileges attendant thereto.

273.    San Diego State's policy and practice of prohibiting the use of Associated Students funds to pay for religious expression is an impermissible viewpoint-based and content-based restriction of constitutionally protected expression, and vests unbridled discretion in the ASC to restrict constitutionally protected speech.

274.    Defendants' discriminatory treatment of Plaintiffs' speech constitutes a viewpoint-based restriction and a content-based exclusion.

275.    By discriminating against the viewpoint and content of Plaintiffs' speech, the Defendants have violated and continue to violate Plaintiffs' right to the freedom of speech under the First Amendment.

276.    The Defendants have no compelling reason that would justify the burden imposed upon the Plaintiffs' speech.

277.    WHEREFORE, Plaintiffs respectfully request that the Court grant the relief set forth hereinafter in the prayer for relief.

37

**THIRD CLAIM: VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION**

278.     The allegations contained in all preceding paragraphs are realleged and incorporated herein by reference.

279.     Defendants' nondiscrimination policies target religious student groups for discriminatory treatment and therefore are neither facially neutral nor generally applicable in respect to religion.

280.     Defendants' nondiscrimination policies are not generally applicable because they exempt numerous student organizations and athletic teams from the prohibition on gender-based discrimination, thus undermining the purpose of the nondiscrimination policies, without providing a similar exemption for religious conduct that violates the nondiscrimination policies.

281.     The text of each plaintiff student organizations' constitution and/or bylaws, its Statement of Faith, and standards of Christian conduct are informed and motivated by the sincerely held religious beliefs of the members of each organization.

282.     The Defendants' nondiscrimination policies and enforcement thereof substantially burden Plaintiffs' religious beliefs and expression.

283.     The Defendants have no compelling reason that would justify the burden imposed upon the free exercise of religion of the Plaintiffs.

284.     WHEREFORE, Plaintiffs respectfully request that the Court grant the relief set forth hereinafter in the prayer for relief.

**FOURTH CLAIM: VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION**

285.     The allegations contained in all preceding paragraphs are realleged and incorporated herein by reference.

286.     The Equal Protection Clause of the Fourteenth Amendment requires that government actors treat equally all persons similarly-situated.

287.     Defendants denied recognized status to the plaintiff student groups, and the rights, benefits, and privileges attendant thereto, based upon the plaintiff student organizations' requirement that their members and/or officers be Christians who affirm their Christian tenets

38

of belief and endeavor to live according to their Christian standards of conduct.

288.    Defendants grant recognized status to similarly-situated nonreligious student groups without regard to whether they require their members and/or officers to affirm the group's beliefs and purposes, or abide by the group's standards of conduct.

289.    In so doing, the Defendants have treated the plaintiff student groups differently than similarly-situated student groups.

290.    San Diego State's policy and practice of denying funding to pay for the religious expression and activities of student groups, while permitting funding for similar non-religious expression and activities of student groups, violate the requirement of equal protection of the laws.

291.    Defendants' disparate treatment of the plaintiff student groups affects the exercise of their fundamental rights to free association, free speech, and free exercise of religion.

292.    Defendants have no compelling reason that would justify their disparate treatment of the plaintiff student groups.

293.    Defendants' policies and practices therefore violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

294.    WHEREFORE, Plaintiffs respectfully request that the Court grant the relief set forth hereinafter in the prayer for relief.

**FIFTH CLAIM: VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION**

295.    The allegations contained in all preceding paragraphs are realleged and incorporated herein by reference.

296.    Defendants' nondiscrimination policies are vague, such that the policy fails to provide persons of ordinary intelligence a reasonable opportunity to understand what conduct they prohibit, and they authorize and encourage arbitrary and discriminatory enforcement by Defendants.

297.    The terms "sexual orientation" and "marital status," as used in Defendants' nondiscrimination policies, are inherently vague and capable of multiple definitions, and thus

1 | do not place Plaintiffs on notice of what conduct would violate the nondiscrimination policies.

2 |      298.    WHEREFORE, Plaintiffs respectfully request that the Court grant the relief set

3 | forth hereinafter in the prayer for relief.

4 | **PRAYER FOR RELIEF**

5 | Plaintiffs respectfully request the following relief:

6 |     A.    Adjudge, decree and declare the rights and other legal relations of the parties to

7 | the subject matter in controversy in order that such declarations shall have the force and effect

8 | of final judgment and that the Court retain jurisdiction of this matter for the purpose of

9 | enforcing the Court's Orders;

10 |     B.    Pursuant to 28 U.S.C. § 2201, declare that Defendants' past enforcement against

11 | the plaintiff student groups of Defendants' nondiscrimination policies was unconstitutional and

12 | violated the Plaintiffs' rights guaranteed under the First and Fourteenth Amendments to the

13 | United States Constitution;

14 |     C.    Pursuant to 28 U.S.C. § 2201, declare that Defendants' nondiscrimination

15 | policies violate on its face the First and Fourteenth Amendments to the United States;

16 |     D.    Pursuant to 28 U.S.C. § 2202, Fed. R. Civ. P. 65, and 42 U.S.C. § 1983,

17 | preliminarily and permanently enjoin Defendants, their agents, officials, servants, employees,

18 | and any other persons acting in their behalf, from enforcing against Plaintiffs the

19 | unconstitutional portions of their nondiscrimination policies which infringe Plaintiffs' rights to

20 | the freedom of speech, freedom of association, free exercise of religion, equal protection of the

21 | laws, and due process of law;

22 |     E.    Pursuant to 28 U.S.C. § 2201, declare that San Diego State's policy and practice

23 | of prohibiting the use of ASC funds for religious expression violate the First and Fourteenth

24 | Amendments to the United States Constitution both facially and as applied;

25 |     F.    Pursuant to 28 U.S.C. § 2202, Fed. R. Civ. P. 65, and 42 U.S.C. § 1983,

26 | preliminarily and permanently enjoin Defendants, their agents, officials, servants, employees,

27 | and any other persons acting in their behalf, from enforcing San Diego State's policy and

28 | practice of prohibiting the use of ASC funds for religious expression against Plaintiffs;

1    G.    Award nominal damages to Plaintiffs to vindicate their constitutional rights

2  which were violated by Defendants;

3    H.    Pursuant to 42 U.S.C. § 1988 and other applicable law, award Plaintiffs their

4  costs and expenses of this action, including reasonable attorneys' fees;

5    I.    Grant such other and further relief as the Court deems equitable, just, and

6  proper.

7  Respectfully submitted on this, the 28th day of November, 2005.

8                    By:  _Timothy D Chandler_____

9                         TIMOTHY D. CHANDLER, CA Bar No. 234325
                          Email: tchandler@telladf.org
10                        ALLIANCE DEFENSE FUND
                          101 Parkshore Drive, Suite 155
11                        Folsom, California 95630
                          (916) 932-2850; (916) 932-2851 (fax)

12
                          JEREMY D. TEDESCO, AZ Bar No. 023497
13                        jtedesco@telladf.org
                          ALLIANCE DEFENSE FUND
14                        15333 North Pima Road, Suite 165
                          Scottsdale Arizona 85260
15                        (480) 444-0020; (480) 444-0028 (fax)

16
                          Attorneys for Plaintiffs
17

18

19

20

21

22

23

24

25

26

27

28

41

**VERIFICATION**

1

2      I, the undersigned, citizen of the United States and resident of the State of California,

3 have read the foregoing Verified Complaint and declare under penalty of perjury, under the laws

4 of the State of California, that the foregoing is true and correct.

5      Dated this _28ᵗʰ_ day of November, 2005

6

7

8                         Haley Hawthorne

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION

I, the undersigned, citizen of the United States and resident of the State of California, have read the foregoing Verified Complaint and declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Dated this 28ᵗʰ day of November, 2005

Trevor Stokes

43

1

2

**VERIFICATION**

3    I, the undersigned, citizen of the United States and resident of the State of California,

4  have read the foregoing Verified Complaint and declare under penalty of perjury, under the laws

5  of the State of California, that the foregoing is true and correct.

6    Dated this 28th day of November, 2005

7

8

9    Melissa Travis

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

44

1

## VERIFICATION

2

3    I, the undersigned, citizen of the United States and resident of the State of California,

4    have read the foregoing Verified Complaint and declare under penalty of perjury, under the laws

5    of the State of California, that the foregoing is true and correct.

Dated this 28th day of November, 2005

6

7

8    James Rosenberg

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

45

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| EVERY NATION CAMPUS MINISTRIES AT SAN DIEGO STATE UNIVERSITY; EVERY NATION CAMPUS MINISTRIES AT LONG BEACH STATE UNIVERSITY, et al. | ROBERTA ACHTENBERG, JEFFREY BLEICH, HERBERT CARTER, CAROL CHANDLER, MOCTESUMA ESPARZA, DEBRA S. FARAR, ROBERT FOSTER, MURRAY L. GALISON, GEORGE GOWGANI, et al. |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Alliance Defense Fund
Jeremy D. Tedesco
15333 N. Pima Rd, Suite 165
Scottsdale, AZ 85260

Alliance Defense Fund
Timothy D. Chandler
101 Parkshore Drive
Folsom, CA 95630

ATTORNEYS (IF KNOWN)

'05CV 2186   LAB AJB

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX (For Diversity Cases Only) FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

42 U.S.C. § 1983  DEFENDANTS DENIED RECOGNIZED STATUS TO FOUR CHRISTIAN STUDENT GROUPS THAT CANNOT COMPLY WITH DEFENDANTS' NONDISCRIMINATION POLICIES.   42:1983cv  cfl

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| | | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | ☐ 862 Black Lung (923) | |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prisoner Condition | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 | DEMAND $ NOMINAL DAMAGES | Check YES only if demanded in complaint. JURY DEMAND: ☐ YES ☒ NO |
|---|---|---|---|

VIII. RELATED CASE(S) IF ANY (See Instructions):   JUDGE ___   Docket Number ___

DATE  11/28/05

SIGNATURE OF ATTORNEY OF RECORD  Timothy D. Chandler

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

119088 $250.00

**ORIGINAL**